IN THE UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVI SCHWARTZBAUM & SALVACION SCHWARTZBAUM<br><br>    Plaintiffs,<br><br>  -against-<br><br>EMIGRANT MORTGAGE COMPANY,<br><br>    Defendant. | Case No. **09 CIV. 3848**<br>**JUDGE ROBINSON**<br><br>COMPLAINT FOR RESCISSION<br>DECLARATORY RELIEF,<br>VIOLATION OF NEW YORK<br>UNFAIR TRADE PRACTICES ACT<br>VIOLATIONS OF HOEPA |

## I. **INTRODUCTION**

1. Plaintiffs Davi Schwartzbaum and Salvacion Schwartzbaum are owners of a home in Nanuet, New York and Emigrant Mortgage Company, Inc. took out a simultaneous interest in plaintiffs principal dwelling in the form of a mortgage.

2. Emigrant Mortgage Company, however, failed to provide plaintiffs with material disclosures including the three day Notice of Right to Cancel required by the Truth in Lending Act, 15 U.S.C. sec. 1601 et. Seq. ("TILA").

3. Additionally, as Plaintiff's loan comes under the rubric of that portion of TILA invoking the Home Ownership Equity Protection Act (HOEPA), 15 U.S.C. sec 1639 et seq., defendant failed to provide appropriate disclosures as required by that "Act", as well.

4. Defendant induced plaintiffs to enter into a loan product, whose primary feature involves an unconscionable and confiscatory "Default Interest Rider"

5. This Default Interest Rider provides a means by which Emigrant Mortgage can accelerate a debtor's debt, elevate its interest rate and pave the way for Emigrant Mortgage's seizure of the debtor's collateral, via a foreclosure action and sale.

6. This is an action for declaratory, injunctive and monetary relief on behalf of plaintiffs against defendant Emigrant Mortgage Co., Inc. Plaintiffs seek rescission, restitution, disgorgement, refunds, and statutory and compensatory damages.

7. This Complaint is filed under TILA and HOEPA to enforce plaintiffs right to rescind the residential mortgage loan; to avoid defendant's security interest in plaintiffs' home; and to recover actual and statutory damages, reasonable attorneys fees and cost by reason of defendant's violation of TILA and Regulation Z. Plaintiff also asserts state law claims.

## II.    JURISDICTION AND VENUE

8. Jurisdiction of the subject matter in this Court is proper pursuant to 28 U.S.C. sec.1331 and 1337. The Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. sec.2201. as Plaintiffs have sought relief under multiple Federal Statutes.

9. Jurisdiction of the Federal claims is proper in this Court pursuant to 15 U.S.C. sec. 1601 et seq. and 15 U.S.C. sec. 1640(e)

10. Jurisdiction over the state-law claims is proper under the doctrine of Supplemental or Pendent Jurisdiction pursuant to 28 U.S.C. sec. 1367(a).

11. The cause of action herein arose in the County of Rockland, New York by virtue of a mortgage loan and related transactions associated therewith which concerns plaintiffs' primary residential real estate and which is located within this Judicial District.

12. Venue of this action is proper within this Court pursuant to 28 U.S.C. sec 1391(b) in so far as a substantial part of the events giving rise to plaintiffs' claims have occurred within this district and the mortgaged property is situated in this district.

## III. PARTIES

13. Davi and Salvacion Schwartzbaum are residents of the State of New York with a principal place of residence located at 68 College Avenue, Nanuet, New York. (the "property").

14. Upon information and belief, Emigrant Mortgage is a New York corporation with its principal place of business at 7 Westchester Plaza, Elmsford, New York and is registered to do business in the State of New York and is deemed a "creditor" pursuant to TILA and Regulation Z.

## 1V. FACTUAL BACKGROUND

15. On or about February 13, 2008, plaintiffs entered into a loan agreement with defendant, whereby their principal residence (the "property") was secured by a mortgage in favor of defendant.

16. This $180,000 loan was a refinance of another loan and the proceeds of the refinance were to be used for the purpose of making necessary repairs to plaintiffs' home.

17. Upon information and belief, all supporting papers required to document the loan was prepared by Emigrant Mortgage or personnel operating under its direction and control. Emigrant Mortgage never indicated that it was willing to amend or negotiate any terms or conditions contained in the Note or Mortgage that was forwarded to plaintiff for execution. Plaintiffs were not given a choice or opportunity to negotiate any contract terms relating to the refinance transaction.

18. Plaintiffs were not trained in and/or familiar with the intricacies of housing finance under federal or state laws.

19. The loan was memorialized in adjustable rate note (the "note") with an initial rate of 11.65%. A copy of the Note shall be filed as Exhibit "A" to the complaint and is incorporated herein.

20. Contained in the Note and attached riders, which were for the first time provided at closing, were certain onerous provisions that allowed Emigrant Mortgage, upon a default in excess of thirty (30) days in duration, to accelerate the loan and increase the rate of interest payable under the Note to a Default Interest Rate of 18% until the default was remedied and to impose other fees and charges. Prior to closing plaintiffs had never been apprised. A copy of the Default Interest Rider to be filed as Exhibit "B" and is incorporated herein.

21. When plaintiffs originally applied for the loan, they were told that the 11.65% rate was to be a fixed loan for 30 years.

22. At closing plaintiffs learned that they were actually entering into an adjustable rate mortgage ("ARM"), but because they were in desperate need of money to repair their house, and were assured that they would be able to refinance into a more affordable loan in the near future, they closed on the loan, anyway.

23. Furthermore, at closing, due to unfinished repairs, the value of house as collateral was less than its fair market value and as result in order to insure that repairs were made, defendant Emigrant Mortgage held onto and escrowed some $38,000 of the total monies funded.

24. Plaintiffs were not aware that $38,000 of their money was being held by defendant. And logically flowing from this factual circumstance is that plaintiffs were not aware of how to secure these funds after repairs on their house were successfully completed.

25. Plaintiffs were similarly unaware, when signing the Default Interest Rider, the meaning and consequences of signing-off on said document.

26. At closing, unrepresented, plaintiffs were given the loan documents and signed these documents at the direction of defendant's closing agent.

27. Plaintiffs were not given "right to cancel" notices under TILA and HOEPA.

28. Because of the failure to give plaintiffs the above notices as required by Federal Law, plaintiffs' rights to cancel extends for three years from the date of the closing.

29. Whatever, trepidation plaintiffs had with regards to the affordability of their loan, they were assured by Emigrant Mortgage that they would be able to refinance to a more manageable loan in the future.

30. Payments due under the Note commenced on or about April, 2008.

31. Thereafter, on or about October, 2008 plaintiffs were unable to timely pay their monthly obligations under the Note.

32. Even though repairs on their house had been completed, because plaintiffs were not aware that defendant was holding some $38,000 in escrow from the loan closing, plaintiffs were deprived of money that was rightfully theirs - money that would have been used to pay their monthly promissory note obligations.

33. And but for defendant's failure to make plaintiffs aware that it was holding substantial monies of theirs and the means by which those funds could be accessed, plaintiffs would never have defaulted in the first place.

34. On or about November, 2009 Emigrant Mortgage subsequently notified plaintiff by letter stating that it was accelerating the payment schedule of plaintiffs' Note to the defaulting interest rate of 18%. A copy of this letter shall be filed as Exhibit "C"and incorporated herein.

35. Upon information and belief Emigrant Mortgage was aware that by accelerating the debt and by increasing plaintiffs' interest rate on the note to 18%, that the increased monthly amounts due under the newly adjusted rate would make it impossible for plaintiffs to pay off previously unpaid obligations and would lead inevitably to plaintiffs' having their house foreclosed upon and sold.

36. Moreover, but for defendants failure to adequately disclose the terms and underlying meaning of the escrow agreement, money that would have prevented plaintiffs from defaulting, was unnecessarily and wrongfully withheld from plaintiffs.

37. Emigrant Mortgage has brought an action in the Supreme Court of the State of New York, Rockland County to foreclose on the property. See copy of the complaint that will be filed as Exhibit "D" and incorporated herein.

38. Relying in substantial part on the effectiveness of the Default Interest Rider as a means to increase a debtor's interest rate and overall indebtedness, Emigrant Mortgage has demanded hundreds if not thousands of dollars in additional interest charges from plaintiffs.

39. Upon information and belief, there is no added cost or expense incurred by Emigrant Mortgage that is associated with the collection of Default Interest pursuant to the Default Interest Rider. The Default Interest Rate is strictly an arbitrarily determined rate designed to increase indebtedness rapidly and unfairly penalizing plaintiffs. The amount demanded under the Default Interest Rider is also unconscionable in light of Emigrant's cost of funds and the lending rates in the current interest rate climate.

40. And to the extent that the Default Interest Rate Rider has no reasonable relationship to the costs associated with late payment of plaintiffs' monthly mortgage obligations, New York courts will not enforce such provisions as they are deemed punitive in nature.

## V.    PLAINTIFFS' CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Truth In Lending Rescission and Declaratory Relief)

41. Plaintiffs repeats the allegations contained above as if fully stated forth herein for the first time.

42. At all relevant times, Emigrant Mortgage, in the ordinary course of its business: (a) has and does regularly extend, or offer to extend, consumer credit payable by written agreement in more than four separate installments or for which a finance charge is or may be required; and (b) has and does originate two or more mortgages in any twelve month period, on which a security interest in the borrowers' home is taken. Accordingly Emigrant Mortgage is a "creditor" and plaintiffs are "debtors" pursuant to the Truth in Lending Act (TILA"), 15 U.S.C. sec1620(f).

43. In connection with the subject loan transaction, Emigrant Mortgage has violated the disclosure requirements of TILA and Regulation Z by:

> (a)  failing to deliver to plaintiffs disclosures required under TILA, including the required two copies for each plaintiff of a Notice of Right to Cancel in a form they could keep as required by Regulation Z. sec.226.23(b)(1);
>
> (b) failing to disclose properly and accurately the "amount financed," in violation of 15 U.S.C. sec 1638(a)(2)(A) and 12 C.F.R. sec226.18(b);
>
> (c) failing to disclose properly and accurately the "finance charge", in violation of 15 U.S.C. sec. 1638(a)(3) and 12 C.F.R. secs. 226.4 and 226.18(d);
>
> (d) failing to disclose properly and accurately the "annual percentage rate", in violation of U.S.C. section 1638(a)(4) and 12 C.F.R. sec. 226.18(e);
>
> (e) failing to disclose properly and accurately all escrow agreements.

44. The above TILA violations give plaintiffs an extended right to rescind the loan held by Emigrant Mortgage pursuant to 15 U.S.C. sec.1635 and 12 C.F.R. sec.226.23.

45. As a result, plaintiffs right to rescind continues for a period of three years from consummation of the loan made on February 13, 2008. This complaint is to be construed, for these purposes, as formal and public notice of plaintiffs' notice of rescission of the mortgage and note.

46. Plaintiff hereby demands judgment declaring their right to rescind the transaction pursuant to 28 U.S.C. sec. 2201 and injunctive relief directing defendant to rescind the transaction as required under TILA, and voiding the security interest (mortgage) in plaintiffs home.

## AS AND FOR A SECOND CAUSE OF ACTION
(Violations of Home Equity Protect Act [HOEPA])

47. Plaintiffs repeats the allegations herein as if fully stated here for the first time.

48. In 1994 , Congress enacted the Home Ownership Equity Protection Act ("HOEPA") which is codified at 15 U.S.C. sec 1639 et seq. with the intention of protecting homeowners from predatory lending practices targeted at vulnerable consumers.

49. HOEPA requires lenders to make certain defined disclosures and prohibits certain terms from being included in certain high rate mortgages and loans where the "total points and fees" exceed eight percent and where those loans are secured by a borrower's principal place of residence. 15 U.S.C. sec. 1602(aa)(1)(B)(I).

50. In the event of noncompliance, HOEPA imposes civil liability for rescission and statutory and actual damages.

51. Plaintiffs are "consumers", and defendant is a "creditor" as defined by HOEPA.

52. Plaintiffs' loan was a "high-interest" loan as defined by HOEPA.

53. Alternatively, plaintiffs' loan is subject to HOEPA by virtue of the fact that the financing costs exceeded eight per cent (8%) of the total amount funded.

54. Defendant violated HOEPA by numerous acts, material omissions, including but not limited to:

(a) failing to provide Plaintiffs with the disclosures required under HOEPA at least three business days prior to the consummation of the transaction, in violation of 15 U.S.C. Sec 1639(a) and (b) and Regulation Z sec 226.32(e)(1);

(b) extending credit to plaintiffs without any basis to believe they could pay back the loan;

(c) extending credit to Plaintiffs based on their collateral without regards to their repayment abilities in violation of 15 U.S.C. sec 1639(h) and 12 C.F.R. sec 226.32(e)(1);

(d) failing to make additional disclosures, including but not limited to the failure of said defendant to provide accurate TILA disclosures

55. By virtue of the defendant's violations of HOEPA including defendant's failure to provide a notice informing plaintiffs of their right to rescind the loan within three days after the loan closing, Plaintiffs have a legal right to rescind the consumer credit transaction which is the subject of this action. This complaint is to be construed, for these purposes, as formal and public notice of plaintiffs' notice of rescission of the mortgage and note.

56. As a direct consequence of and in connection with plaintiffs' legal and lawful exercise of their right of rescission, defendant is required within twenty (20) days of this Notice of Rescission to:

(a) desist from making any claims for finance charges in the transaction;

(b) return of all monies paid by Plaintiffs in connection with the transaction ;

(c) satisfy all security interests, including mortgages which was acquired in the original transaction and subsequent thereto.

57. Plaintiffs hereby demand judgment declaring their right to rescind the transaction pursuant to 15 U.S.C. sec. 1639 and Regulation Z and injunctive relief directing defendant to rescind the transaction as required under TILA, and voiding the security interest (mortgage) in plaintiffs home.

## AS AND FOR A THIRD CAUSE OF ACTION
(Declaration that the Default Interest Rider is Unconscionable,
Against Public Policy and Unenforceable and Void as a Matter of Law)

58. Plaintiffs repeats each and every allegation as if fully stated herein for the first time.

59. Treating and allowing plaintiffs' loan interest rate to reset and become fixed to an 18% interest rate based solely on plaintiffs failure to make timely loan payments, and which payments are ultimately secured by plaintiffs' principal place of residence, shocks the conscience, is patently unfair, unwarranted, illegal, confiscatory and is not otherwise justified as commercially reasonable under the circumstances.

60. As such plaintiffs seek a declaration that the Default Interest Rider is unconscionable, against public policy and found to be unenforceable and void as matter of law.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Declaratory Action to Enforce Contract/Breach of Contract)

61. Plaintiff repeat each and every allegation as if fully stated herein for the first time.

62. In paragraph 6 of the Note, plaintiff and Emigrant Mortgage explicitly agreed that if any interest or loan charges collected or to be collected in connection with the Note exceeded maximum loan charges set by any law, then such interest or loan charges would be reduced by

the amount necessary to comply with such limits and all sums collected and/or attempted to be collected by Emigrant Mortgage in excess of such limits would be returned to plaintiff or offset against the principal owed to Emigrant under the Note.

63. Therefore, Emigrant Mortgage explicitly agreed that plaintiffs would not be charged an excessive or unconscionable amount of interest, including unenforceable and excessive penalties, upon any default by them on the Loan.

64. Emigrant Mortgage has breached the terms of the Note by charging interests greater than that allowed by law, but failing to reduce the sums collected or claimed as is required by contract.

65. Based upon the above a judgment should be entered declaring that defendant has breached its contract with plaintiff by charging interest in excess of that allowed by law and thereafter failing to acknowledge its overcharge, and to the extent appropriate entering judgment for damages resulting from said breach as to be determined at trial.

## AS AND A FOR A FIFTH CAUSE OF ACTION
### (Breach of Implied Contract)

66. Plaintiff's repeat each and every allegation as if fully stated herein for the first time.

67. Emigrant and plaintiffs implicitly agreed that plaintiffs would not be charged an excessive or unconscionable amount of interest.

68. Emigrant Mortgage breached the implied agreement with plaintiffs.

69. Based upon the above a judgment should be entered declaring that defendant has breached an implied agreement not to charge an excessive or unconscionable amount of interest, and to the extent appropriate awarding damages for said breach as to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Unjust Enrichment)

70. Plaintiffs repeat each allegation as if fully stated herein for the first time.

71. As a result of the exorbitant, usurious, illegal and unconscionable rate of interest and late payment penalties plaintiffs stand to pay thousands of dollars for interest and/or late penalties that are enormously inflated, all to plaintiffs' detriment.

72. The interest of justice will be thwarted if Emigrant Mortgage were allowed to retain the unjustified and unwarranted benefits defendants received and as such it should be disgorged of any interest/fees they were not entitled to and a judgment entered for an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Breach of Duty of Good Faith and Fair Dealing)

73. Plaintiffs repeat each of the above allegations as if fully stated herein for the first time.

74. Under the contracts, either implied, expressed or otherwise between plaintiffs and Emigrant Mortgage , defendant was obligated and had a duty of good faith and fair dealing in performance of said contract.

75. By demanding payment of an exorbitant, usurious and unconscionable rate of interest from plaintiffs as soon as they failed to make timely payments, Emigrant Mortgage insured that plaintiffs would not be able to meet their respective obligations from that point forward, preventing any potential cure of any default under the terms of the Note and insuring a windfall for Emigrant Mortgage.

76. Emigrant Mortgage refusal to withdraw its unconscionable, usurious interest rates/punitive late payment penalties from plaintiffs' balance insures the loss of plaintiffs' home to foreclosure and depriving them of the benefit of the contract, which is the inevitable consequence of the contracts provision that defendant is attempting to enforce.

77. Based upon the above a judgment should be entered declaring that Emigrant Mortgage has breached its contract with plaintiffs in that it has failed to abide by the terms of its duty to act in good faith and deal fairly with plaintiffs in performance of its contract obligations and to the extent appropriate awarding damages in an amount to be determined at trial.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
(Deceptive Practices Act Pursuant to GBL Sec. 349)

78. Plaintiffs repeat the above allegations as if fully stated herein for the first time.

79. Defendant "conducted a business" and .or "furnished a service" as those terms are defined by New York's General Business Law Sec. 349 (the Deceptive Practices Act").

80. Emigrant Mortgage violated the Deceptive Practices Act by engaging in a practice that was misleading in a material way, unfair, deceptive, and contrary to public policy and generally recognized standards of business, including but not limited to:

> (a). Extending credit to Plaintiffs based on their collateral, rather than on their ability to pay;
>
> (b). Inducing Plaintiffs to sign the loan documents by assuring them that they could use the proceeds of the loan to make their mortgage payments and then failing to release escrow funds that would have enabled plaintiffs to pay their mortgage on time and prevent their default;
>
> (c). Misrepresenting the cost of credit to plaintiffs by failing to provide them with a good faith estimate: of settlement costs three days after the submission of their loan application, as is required by federal law;

(d). Misrepresenting the terms of the loan interest as being subject to a fixed-rate, when in fact the loan interest rate was subject to periodic changes;

(e). Hiding the cost of credit by failing to deliver to plaintiffs the disclosure required under federal law for high cost loans;

(f). Misrepresenting to plaintiffs the nature of the documents they were signing and the nature and details of the transaction they were entering into including an onerous, unconscionable and punitive default interest rate;

81. As a direct and proximate result of Emigrant Mortgage's improper conduct described herein, Emigrant Mortgage committed unfair and deceptive acts or trade practices pursuant to New York law.

82. As a direct and proximate result of Emigrant Mortgage's misconduct, plaintiffs have suffered damages

83. Defendant's practices have had and may continue to have a broad impact on consumers throughout the State of New York.

84. Plaintiffs seek an award for compensatory and statutory damages as determined at trial.

## AS AND FOR A NINTH CAUSE OF ACTION
(Usury)

85. Plaintiffs repeat the above allegations as if fully stated herein for the first time.

86. Defendant by having the loan interest rate automatically reset to 18% based solely on plaintiffs' not making their loan payments on time, such default interest rate must be deemed usurious under common and statutory law.

87. As such plaintiffs request a judgment be entered declaring that the entire mortgage loan transaction be found as void ab initio, and that all monies received by defendant as payments on their loan be disgorged and returned to plaintiffs.

## AS AND FOR A TENTH CAUSE OF ACTION
(Injunction to Expunge Negative Credit Reports)

88. Plaintiffs repeats each of the above allegations as if fully stated herein for the first time.

89. Upon information and belief, plaintiffs had intended to use the extension of credit by defendant as a means of improving their own credit scores so as to make it easier for them in the future to secure credit on more favorable terms.

90. Defendant failed in its obligation under TILA to properly and timely disclose to plaintiffs the terms and conditions of the escrow agreement they were entering into.

91. Plaintiffs did not even know that their money was being held in escrow by defendant.

92. But for defendant's failure to properly inform plaintiffs of the terms and conditions pertaining to plaintiffs' escrowed monies, plaintiffs would never have defaulted in the first place, and this foreclosure action and the alleged default upon which it is based, would never have occurred. But for defendants wrongful conduct, plaintiffs credit scores with the credit rating agencies would not have been so defamed.

93. As a result of defendant's improper and illegal conduct plaintiffs credit scores would not have been adversely affected.

94. Plaintiffs therefore seek an injunction in the form of an order directing defendant to remove all negative credit reports associated with their alleged default under the promissory note which is the basis for this action. And plaintiffs further seek any monetary damage resulting from defendant's improper negative credit reporting.

## VI.    DEMAND FOR JURY TRIAL

95. Pursuant to Federal Rule of Civil Procedure 38, plaintiff demands a trial by jury as to

all issues so triable.

## VII.    PRAYER FOR RELIEF

WHEREFORE, it is respectfully requested that this Court :

(a) Award judgment on plaintiffs' first cause of action and ordering

(1) rescission of the mortgage loan transaction;

(2) termination of the mortgage and security interest in the property which is the subject of the mortgage loan documents created in the loan application.

(3) return of any money or property paid by the plaintiffs including all payments made in connection with the transaction

(b) Award judgment on plaintiffs' second cause of action and ordering

(1) rescission of the mortgage loan transaction;

(2) termination of the mortgage and security interest in the property which is the subject of the mortgage loan documents created in the loan applicat ion.

(3)  return of any money or property paid by the plaintiffs including all payments made in connection with the transaction

(4) an amount of money equal to twice the finance charge in connection with the transactions;

(5) relinquishment of the right to retain any proceeds; and

(6) actual damages in an amount to be determined at trial, including attorney's fees

(c)  Award judgment on plaintiffs' third cause of action and declaring that the Default Interest Rider is unenforceable and void as matter of law

(d)  Award judgment on plaintiffs' fourth cause of action and declaring that defendant has breach its contract and that plaintiffs be compensated for damages suffered and as appropriate

(e) Award judgment on plaintiffs' fifth cause of action for breach of an implied contract and that plaintiffs be compensated for damages suffered and as appropriate.

(f) Award judgment on plaintiffs' sixth cause of action based upon defendant being unjustly enriched and ordering defendant to disgorge itself and return to plaintiffs any money it is not entitled to;

(g) Award judgment on plaintiffs' seventh cause of action for breach of the duty of good faith and fair dealing and compensating plaintiffs for damages resulting from said breach;

(h) Award judgment on plaintiffs' eighth cause of action based upon the Deceptive Practices of defendant and compensating plaintiffs for damages suffered and to further include statutorily prescribed damages

(i) Award judgment on plaintiffs' ninth cause of action based upon a claim of usury and voiding the entire loan transaction ab initio and ordering of the return of all monies associated with the entire loan transaction;

(j) Awarding judgment on plaintiffs' tenth cause of action and directing and ordering defendant to take all steps necessary to remove any and all negative credit reports that came about as a result of plaintiffs' alleged payment defaults and this subsequent foreclosure action.

(k) Award attorney's fees as required by statute

(l) Enjoining defendant from engaging in deceptive acts and practices that affect consumers under New York State's General Business Law sec. 349(h);

(m) Directing defendant to remove from all the credit rating agencies all negative reports relating to the alleged loan default

(n) Awarding reasonable costs for this action; and

(o) Award such other and further relief as this Court deems just and proper

The Plaintiffs

Legal Aid Society of Rockland County, Inc.
Eric Feinberg, Of Counsel
2 Congers Road
New City, New York   10956
(845) 634-3627
Juris No. EF3196